CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/26/2024
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MARCELLUS POWELL, | CASE No. 6:23-cv-00076 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION AND ORDER |
| CHARTER CENTRAL, LLC d/b/a TACO BELL, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's partial motion to dismiss for failure to state a claim. Plaintiff Marcellus Powell alleges, in Count I of his complaint, that Defendant Charter Central, LLC (or Taco Bell) violated Title VII of the Civil Rights Act of 1964 by fostering a racially hostile work environment; meanwhile, in Count III, he contends that Taco Bell violated 42 U.S.C. § 1981 by purposefully denying him the same rights to make and enforce contracts as enjoyed by white citizens. Defendant now seeks dismissal of Counts I and III. For the reasons stated below, the Court will **deny** Defendant's motion.

### BACKGROUND[1]

Plaintiff—an African American—was employed by Taco Bell between November 2021 and February 2022. Dkt. 15 ¶¶ 6, 19, 24-28. In Plaintiff's three months of employment, he alleges that he and another African American employee were consistently assigned "unfavorable job duties" such as mopping the floors and staying late to perform nightly clean up duties. ¶¶ 21-23. They were often asked to do these tasks "[d]espite working double shifts." ¶ 23.

---

[1] These facts are drawn from the Amended Complaint, Dkt. 15, and are assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

1

Supposedly, non-African American employees were not usually given these disfavored tasks. ¶¶ 21-22.

Significant here, on or about February 11, 2022, Plaintiff was asked to stay late after working a double shift to perform closing tasks alongside the other African American employee. ¶¶ 24-25. After inquiring why Plaintiff and his African American co-worker were required to sweep and clean the floors, his Assistant Manager ("supervisor") allegedly responded, "because you are black." ¶ 26. Plaintiff claims to have recorded his supervisor later repeating the same comment. ¶ 27. In any event, he immediately objected, protesting about performing tasks delegated to him solely based on his race. ¶ 28. His supervisor then fired him "on the spot."[2] *Id.*

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts"

---

[2] The parties do not dispute that Plaintiff has exhausted administrative relief by filing a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) following his termination.

or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; see *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## ANALYSIS

Because Plaintiff has pled sufficient facts to support his claim of a hostile work environment, the Court will deny Defendant's motion to dismiss Counts I and III of Plaintiff's Complaint. Dkt. 16.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The elements of a hostile work environment claim under Title VII of the Civil Rights Act of 1964 (Count I) and 42 U.S.C. § 1981 (Count III) are identical.[3] *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). Plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.*

Here, there is little dispute that Plaintiff plausibly avers that he was subjected to unwelcome conduct (element 1) because of his race (element 2) which is imputable to his

---

[3] Both parties agree that "Title VII and § 1981 use the same standard for demonstrating a hostile work environment claim." Dkt. 17 at 4; Dkt. 21 at 2-3.

employer (element 4). *See generally* Dkts. 17, 21, 23. Accordingly, the parties' dispute centers around whether the unwelcome conduct at issue was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Spriggs*, 242 F.3d at 183.

Unwelcome conduct rises to the level of being severe or pervasive if, *inter alia*, that conduct created an environment that a reasonable person would find hostile.[4] *See E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008). Although no one factor is dispositive, an objective analysis involves a consideration of all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In the present case, Defendant contends that Plaintiff did not "sufficiently plead that he experienced conduct so severe or pervasive that it rose to the level of a hostile work environment." Dkt. 17 at 2. This is because, in Defendant's view, (1) the "isolated comment Plaintiff asserts does not rise to the level of [a] hostile work environment," *id.* at 5 (cleaned up) and (2) "Plaintiff's contention that he was given unfavorable job duties does not rise to the level of severe and pervasive," *id.* at 7 (cleaned up).

Defendant's argument is unpersuasive. To be sure, the Fourth Circuit has determined that "[s]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not

---

[4] To violate Title VII and § 1981, conduct must be "severe or pervasive enough to create an *objectively* hostile or abusive work environment" that the victim also "*subjectively* perceive[s] … to be abusive." *Harris*, 510 U.S. at 21-22 (emphasis added). In the present case, Defendant does not contest that Plaintiff subjectively perceived Taco Bell's work environment to be hostile; therefore, the Court will focus solely on the reasonable person standard.

amount to discriminatory changes in the terms and conditions of employment." *Sunbelt Rentals*, 521 F.3d at 315. Likewise, the Fourth Circuit has also concluded that "complaints premised on nothing more than … callous behavior by one's supervisors or a routine difference of opinion and personality" do not necessarily establish the presence of a hostile work environment.[5] *Id.* at 315-16.

But at the same time, an isolated incident of harassment *can* "amount to [a] discriminatory change[] in the terms and conditions of employment" if the incident is "extremely serious." *Id.* For instance, the Fourth Circuit has found that the use of racial slurs such as "porch monkey" and "n***er" constitute such isolated, serious comments. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015). Indeed, the Fourth Circuit has clarified that nothing "more than a single incident of harassment"—if sufficiently serious—is required to establish a "viable hostile work environment case." *Id.* at 281.

Equally relevant here, in determining the severity of harassing conduct, the Fourth Circuit has explained that the status of the harasser is significant. *Boyer-Liberto*, 786 F.3d at 278. "[A] supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals." *Id.* (quoting *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). This is

---

[5] Defendant views *Tims v. Carolinas Healthcare Syst.*, 983 F. Supp. 2d 675 (W.D.N.C. 2013) as particularly relevant to the case at hand. Defendant argues that "the allegations in *Tims* are arguably more egregious than the allegations Plaintiff pled in his Amended Complaint," Dkt. 23 at 3-5, and Defendant points out that in *Tims*, the court ultimately found the plaintiff's complaint to be "devoid of any facts to plausibly show that Defendant's conduct was extreme or serious enough to amount to a change in the terms and conditions of her employment," *Tims*, 983 F. Supp. 2d at 681. Defendant's argument, however, misses the mark. *Tims* dealt with "isolated [discriminatory] comments," *id.* at 681, while the present case involves conduct far more serious—that is, a supervisor at one of Defendant's stores admitting to assigning work on the basis of race, Dkt. 15 ¶ 26.

because "a supervisor's power and authority invests his or her harassing conduct with a particularly threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998).

In the present case, Plaintiff plausibly alleges discrimination that is "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Spriggs*, 242 F.3d at 183. Plaintiff's allegations do not involve mere disagreements between employees and superiors. Nor do they involve an off-hand remark, an isolated incident, or simple teasing. Rather, the gravamen of Plaintiff's complaint is that he and another African American employee were routinely assigned menial tasks *because of their race*. How did they know this? Defendant's Assistant Manager—i.e., their "supervisor"—told them, stating, in response to a question "about why Plaintiff and his African American co-worker had to sweep and clean the floors, "because you are black."[6] *See* Dkt. 15 ¶ 26. Far from being an isolated, offensive comment by another employee, this comment, which was made by Plaintiff's supervisor, indicated that for months she had been assigning job tasks based on race. It is hard to imagine that any reasonable person in Plaintiff's position would not find such a startling revelation severely hostile or abusive.

It follows that Plaintiff plausibly alleges that Defendant violated Title VII and 42 U.S.C. § 1981 by fostering a hostile work environment that was racially discriminatory. Therefore, his Title VII and § 1981 claims should be allowed to proceed.

---

[6] Plaintiff also claims to have "record[ed the assistant manager] on his cell phone." Dkt. 15 ¶ 27. Therefore, he provides direct allegations that his supervisor discriminated against him—based on his race—unlike the cases cited by the Defendant where the allegations lacked such a foundation. *See, e.g.*, *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (concluding that the facts allege a "[mere] story of a workplace dispute regarding [an employee's] reassignment" and "callous behavior by her supervisors" rather than "severe or pervasive gender, race, or age based activity"); *Baqir v. Principi*, 434 F.3d 733, 746 (4th Cir. 2006) (similar).

## CONCLUSION

For the above reasons, Charter Central, LLC's Motion to Dismiss, Dkt. 16, is **DENIED** as to Count I and Count III.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 26th day of July, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE